UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
                                    )
CRAIG WILLIAMS d/b/a GEORGETOWN     )
CRANBERRY COMPANY,                  )
                                    )
         Plaintiff,                 )
                                    )
         v.                         )   Civil Action No. 12-11502-DJC
                                    )
TECHTRONIC INDUSTRIES NORTH         )
AMERICA, INC. and HOME DEPOT U.S.A.,)
INC.,                               )
                                    )
         Defendants.                )
                                    )
_____)

## MEMORANDUM AND ORDER

**CASPER, J.**                                              June 23, 2014

### I.    Introduction

Plaintiff Craig Williams d/b/a Georgetown Cranberry Company ("Williams") has filed this lawsuit against Techtronic Industries North America, Inc. ("TTI") and Home Depot U.S.A., Inc. ("Home Depot") (collectively "Defendants"). Defendants have moved for summary judgment. D. 36. For the reasons stated below, the Court ALLOWS Defendants' motion.

### II.   Factual Background

Unless otherwise noted, the following facts are as described in the parties' statements of facts, D. 38, 45, to the extent those facts are not disputed, see D. 45, 47 (responses to statements of facts).

Williams purchased a Ryobi cordless drill at a Home Depot Store. D. 38 ¶ 4; D. 45 at 1, ¶ 5 (although "denying" ¶ 4, William asserts that the drill involved in the fire was a "Ryobi

1

cordless drill and charger set, model P200").[1] Although Williams testified at his deposition that he did not know the model number of the drill, id. ¶ 6, he now asserts that the drill was a Ryobi P200. D. 45 ¶ 5. Williams has proffered no evidence as to the drill's manufacture date. D. 38 ¶ 5.[2] Williams used the drill approximately twelve times prior to July 10, 2009, experiencing no difficulties with the drill. Id. ¶ 7.

On July 10, 2009, Williams began using the drill and the battery died. D. 38 ¶ 8. He removed the battery from the drill and placed it in the charger, which was plugged in at that time. Id. ¶ 9. He then placed a second battery in the drill and used the drill, experiencing no problems with it. Id. ¶¶ 10-11. After using the drill, Williams placed it back on a workbench inside his barn. Id. ¶ 12. Approximately thirty to forty-five minutes later, Williams learned that his barn was on fire. Id. ¶ 13. The fire destroyed the barn that housed Williams's cranberry farming equipment. Id. ¶ 1. At the time of the fire, the barn contained other electrical items including electric heaters, fluorescent lights, overhead lights, electrical outlets, a well pump, an air compressor, a band saw that was plugged into the wall, a bench grinder, a drill press, a welder and a fuse box. Id. ¶ 14. Williams also stored about eight tons of fertilizer, gasoline and diesel in his barn. Id. ¶ 15.

Sergeant (then a Trooper) Michael J. Peters ("Sgt. Peters"), an inspector of the Massachusetts State Police Fire and Explosion Section, conducted an investigation of the fire. D. 45 ¶ 12. He concluded that that there were only two possible items that could have energized the fire: the charger for the Ryobi drill and the air compressor. Id. ¶ 13.

---

[1] See Rodio v. R.J. Reynolds Tobacco Co., 416 F. Supp. 2d 224, 227 (D. Mass. 2006) (deeming defendant's facts admitted where plaintiff disputed facts, but failed to present supported facts that controvert assertion in defendant's statement of facts).

[2] Williams disputes this fact, but provides no basis for the dispute and does not controvert it in his own statement of facts. Rodio, 416 F. Supp. 2d at 227.

Sgt. Peters analyzed the damage to the barn, evaluating the location of the most serious fire damage.  Id. ¶ 15.  For the purposes of his report, he labeled the sides of the building A, B, C and D.  Id. ¶ 17.  Sgt. Peters concluded that Side B suffered little heat damage and that the most severe damage was on Side D.  Id. ¶¶ 19-21.  He further concluded that the burn patterns suggested that the fire originated on Side C of the workshop, close to the CD corner, where the workbench containing the charger was located.  Id. ¶¶ 23, 32.  The compressor, meanwhile, was located in the BC corner of the workshop.  Id. ¶ 25.  Sgt. Peters concluded that the compressor did not fail and that the remains of the wood framing in the area of the compressor indicated that the fire did not originate in the area around the compressor.  Id. ¶¶ 26-27.  Based on the foregoing, he concluded that the fire originated in the area of the workbench that contained the drill.  Id. ¶ 12.  He also examined the battery and concluded that one of its cells exhibited signs of failure.  Id. ¶ 30.  However, he also concluded that:

> It is my opinion that this fire is accidental.  However, further forensic examination of the battery, charger and associated wiring must occur to determine if they have failed, causing the fire.  At this time, my cause is undetermined, however, I reserve the right to re-open the case if additional information is developed in the future.

D. 47 ¶ 12.

After the fire, Williams's insurance company retained EFI Global ("EFI") to investigate the origin of the fire.  D. 38 ¶ 16.  EFI obtained evidence including the drill remains.  Id. ¶ 17.  EFI determined that there was no evidence to support a claim that the drill caused the fire, but that there were instead numerous potential causes.  Id. ¶¶ 18-19.  After completing their investigation, EFI destroyed all of the evidence it had collected, including the remains of the drill.  Id. ¶ 20.

**III.     Procedural History**

Williams commenced this action on August 9, 2012, asserting claims of negligence and breach of warranty. D. 1-1. On January 8, 2014, Defendants moved for summary judgment. D. 36. The Court heard oral argument on the motion for summary judgment on May 21, 2014 and took that motion under advisement. D. 57.

**IV.     Discussion**

   **A.     Standard of Review**

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000). The movant bears the burden of demonstrating the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in its pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but must come forward with specific admissible facts showing that there is a genuine issue for trial. Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

   **B.     Williams Has Alleged Both Negligence and Breach of Warranty**

As noted above, Williams has sued under two theories: Count I alleges a breach of warranty and Count II alleges negligence. To prove a claim of negligence, Williams must allege

4

"(1) a legal duty owed by defendant to plaintiff; (2) a breach of that duty; (3) proximate or legal cause; and (4) actual damage or injury." Jorgensen v. Massachusetts Port Auth., 905 F.2d 515, 522 (1st Cir. 1990). To prove breach of warranty, Williams must allege: "(1) that the defendant manufactured or sold the product; (2) that a defect or unreasonably dangerous condition existed at the time the product left the defendant's hands so that it was not reasonably suitable for the ordinary uses for which goods of that kind were sold; (3) that at the time of his injury, the plaintiff was using the product in a manner that the defendant intended or that could reasonably have been foreseen; and (4) that the defect or unreasonably defective condition . . . was a legal cause of the plaintiff's injury." Alves v. Mazda Motor of Am., Inc., 448 F. Supp. 2d 285, 300 (D. Mass. 2006) (quoting Lally v. Volkswagen Aktiengesellschaft, 45 Mass. App. Ct. 317, 337 (1998)).

### C. Williams Has Not Sufficiently Identified the Product

Defendants argue that Williams has not sufficiently identified which product he alleges was defective or when that product was manufactured. D. 37 at 5-6. To prevail on a products liability claim against a particular manufacturer, a plaintiff must demonstrate that the manufacturer constructed the product in question. See Smith v. Ariens Co., 375 Mass. 620, 623 (1978).

Defendants point to Williams's deposition testimony that he did not know the model number of the drill, the charger or the battery for the drill he owned. D. 38 ¶ 6. Although a party's loss of memory at a deposition should not be the basis for allowing summary judgment, particularly where he later fills his gap in memory, Commercial Underwriters Ins. Co. v. Aires Envtl. Servs., Ltd., 259 F.3d 792, 799 (7th Cir. 2001), Williams has not asserted that such a lapse in memory exists, and has failed to contradict his sworn deposition testimony with any specific admissible facts.

5

At oral argument, Williams posited that the record contained a receipt for the P200 drill when Williams purchased it at Home Depot.  When asked where this receipt was in the record, however, counsel for Williams appeared to retract that assertion.  In his statement of facts, D. 45 ¶ 5, Williams based his assertion that the drill in question was the P200 on "TTI Investigation Notes, Exhibit 3; CPCS Investigation Report, Exhibit 4."  Id.  Upon review of these exhibits, however, the Court has discerned no "specific admissible facts" supporting this assertion. Borges, 605 F.3d at 5.  The first of these exhibits contain handwritten notes referencing the "P200," but also lists other drill model numbers and although Williams's opposition posits that these notes were "taken, it appears, by Debby Hayes, who can be reasonably inferred to be a Techtronic Industries ("TTI") employee," D. 46 at 14, there is no affidavit attesting to that assertion or the meaning of these notes, D. 49-3 at 9.  See Fed R. Evid. 901; Carmona v. Toledo, 215 F.3d 124, 131 (1st Cir. 2000) (noting that "[t]o be admissible at the summary judgment stage, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e)") (citation and internal quotation marks omitted).  The latter exhibit, Exh. 4, which contains an incident report pertaining to the July 10, 2009 fire by the U.S. Consumer Product Safety Commission, indicates that the complainant (Williams) reported that "the original purchase receipt, manufacturer's literature, and product packaging have since been lost or otherwise disposed of," D. 49-4 at 6.  This report also references the P200 drill, D. 49-4 at 8, but the report notes that "[t]he product involved in this incident was unavailable for examination as part of this in-depth investigation therefore the following information is based on details provided by the investigator."  Id.  Accordingly, as to the identity of the drill, any assertion in this report about the drill being the P200 is not based upon personal knowledge is and therefore would be inadmissible.  Fed R. Evid. 602; Nieves-Luciano v. Hernandez-Torres,

397 F.3d 1, 3 (1st Cir. 2005) (affirming district court's entry of summary judgment where the district court concluded that it could not consider evidence that "was inadmissible because it was not based on personal knowledge"). Accordingly, it cannot be said that either document offers specific, admissible evidence to contradict the Defendants' showing here.

> **D.** <u>**Williams Has Insufficient Evidence Regarding a Defect to Proceed to Trial**</u>

Even if Williams had sufficiently identified the product alleged to have caused the July 10, 2009 fire, summary judgment would still be appropriate because Williams has presented no evidence demonstrating that TTI negligently designed the P200 drill or that this drill is unreasonably dangerous. Under Massachusetts law, as a general matter, expert testimony is necessary to aid the trier of fact in determining whether a product is unreasonably dangerous or negligently designed. <u>Goffredo v. Mercedes-Benz Truck Co., Inc.</u>, 402 Mass. 97, 104 (1988). Williams has identified Mr. Marchica as his expert in this arena. D. 46 at 16; D. 33 at 2. However, Mr. Marchica has not yet produced an expert report consistent with Fed. R. Civ. P. 26(a)(2)(B) because, according to Williams, his report will be largely based on the deposition testimony of TTI's Chip Winchester and as of the date of Williams's opposition, this deposition had not taken place, D. 46 at 16, as Williams sought certain evidence regarding a drill other than the P200 model that he contends is at issue in this case.

The purpose of expert disclosures "is to give opposing parties 'a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.'" <u>Chartier v. Brabender Technologie, Inc.</u>, No. 08-40237-FDS, 2011 WL 4732940, at *7 (D. Mass. Oct. 5, 2011) (quoting Fed. R. Civ. P. 26(a)(2) Advisory Committee's Note (1993)). That purpose has been frustrated here, where, despite the court-ordered deadline, Williams has provided Defendants with no explanation for the basis of Mr. Marchica's opinion – if he even has one – that the P200 is defective. Moreover, failure to provide expert reports alone justifies

7

exclusion of that expert's testimony. Adams v. J. Meyers Builders, Inc., 671 F. Supp. 2d 262, 271 (D.N.H. 2009). Here, without any information regarding the witness's employment history, publications, other cases in which he had testified, how he reached his conclusions or even what his conclusions are regarding the drill, see Fed. R. Civ. P. 26(a)(2)(B)(i)-(vi), the Court cannot say that Williams has met his burden here to produce admissible expert testimony as to the alleged defect.

Williams's assertion that Mr. Marchica's opinion will crystallize upon the deposition of Chip Winchester does not save the day. The Court understands Williams's assertions to be that both Mr. Marchica and Mr. Winchester will testify about the HP1802M drill and its relation to the P200. D. 33 at 2. It cannot be the case that Williams's bald assertion that an unknown opinion based on a deposition that has not yet occurred, that will focus on the recall of another product is sufficient to defeat summary judgment (accordingly, the resolution of the pending motion to compel discovery regarding drills other than the P200, D. 31; see D. 34 at 7 (opposition noting that discovery regarding the P200 had previously been produced to Williams), filed on the date that plaintiffs' expert disclosures were due, would not aid Williams in this regard). Although Williams is correct that the Court is obligated to draw all reasonable inferences in favor of the non-moving party, the Court cannot say that it is reasonable to assume that the requisite expert opinion relative to a design defect exists under the facts and circumstances before the Court. Accordingly, even if Williams had not failed to identify the product at issue, summary judgment is appropriate on a separate ground because Williams has proffered insufficient evidence of a design defect to proceed to trial.

  **E.**   **Williams Has Insufficient Evidence Regarding Causation to Proceed to Trial**

Even if Williams could demonstrate that the product in question is the P200 and that the P200 was defective, the Court would still enter summary judgment in favor of Defendants

because Williams also has presented no specific, admissible evidence as to causation. Both of the claims that Williams assert require him to prove causation. Spencer v. Baxter Int'l, Inc., 163 F. Supp. 2d 74, 77 (D. Mass. 2001) (noting that causation is "an essential element" of both negligence and breach of warranty claims under Massachusetts law). In products liability cases, where the causal link between the alleged defect and the accident are beyond the ken of the jury, expert testimony is necessary to defeat summary judgment. Hochen v. Bobst Grp., Inc., 290 F.3d 446, 451 (1st Cir. 2002) (noting that when "[t]he nature of the defect or breach of warranty and its causal relation to the [injury is] complex," a plaintiff must introduce expert testimony). Such determinations are beyond the jury's lay knowledge where they are "generally beyond the scope of an average person's knowledge." Esturban v. Massachusetts Bay Transp. Auth., 68 Mass. App. Ct. 911, 911 (2007) (affirming trial court's entry of summary judgment after excluding expert); see also Morse v. Ford Motor Co., No. 08-11930-RGS, 2010 WL 2773527, at *1 (D. Mass. July 13, 2010) (stating that "[i]n cases involving claims of product defect (such as this case), expert testimony is required because the answers to the highly technical and specialized questions raised by such claims lie outside the knowledge of most lay jurors").

Expert testimony is particularly necessary here, where Williams has not identified the defect and without expert testimony appears to rely solely on burn patterns near where the drill battery was charging at the time of the fire. Under these circumstances, where it is not even apparent that the battery or charger caught on fire, never mind that a product defect caused the battery or charger to combust, the Court concludes that "[t]he nature of the defect or breach of warranty and its causal relation to the [injury is] complex." Hochen, 290 F.3d at 451. This is not, therefore, a simple case where the cause of the damage is apparent to a lay person. Compare Bailey v. Cataldo Ambulance Serv., Inc., 64 Mass. App. Ct. 228, 234-36 (2005) (concluding that

live expert testimony was not necessary where plaintiffs' vehicle had been struck by an ambulance) with Lally, 45 Mass. App. Ct. at 322 (affirming trial court's entry of directed verdict where plaintiffs at trial did not present any expert testimony supporting their theory of the case that their child's spinal injury during a car accident was exacerbated by defect in plaintiffs' car). Williams seemingly acknowledges the necessity of expert testimony here, rebutting Defendants' arguments with a protestation that Sgt. Peters will testify as to causation at trial. D. 46 at 15-16.

Defendants then challenge the reliance upon any proffered testimony from Sgt. Peters on two grounds. First, Defendants argue that Williams has not submitted any information, including an affidavit from him or any other Rule 26 disclosure, disputing that the cause of the fire is "undetermined." D. 48 at 2. On December 30, 2013, Williams disclosed as part of his "motion for a short order of notice," D. 33, that Sgt. Peters would testify regarding causation. Id. at 2. Although Williams has not produced an expert report, both parties have access to the police report he completed following the fire and Williams appears to rely on same. For the purposes of this motion, the Court will assume that Williams has complied with his obligation to disclose Peters under Rule 26 by producing Peters' initial report.

However, as to Defendants' second argument, that Sgt. Peters' testimony is insufficient to establish causation, the Court agrees. "An expert opinion, stated in terms of possibilities, does not satisfy the plaintiff's burden of proof, namely, to establish by a preponderance of the evidence the existence of a design defect which caused the plaintiff's injuries." Goffredo, 402 Mass. at 102-03. The Court has reviewed Sgt. Peters' report, D. 38 at 92-95. Although Sgt. Peters noted that the fire appeared to have originated in the area of the workbench, which is where the battery and charger were located, id. at 93, and that the battery showed signs of failure, id., Sgt. Peters concluded that 'further forensic examination of the battery, charger and

10

associated wiring must occur to determine if they have failed, causing the fire. At this time, my cause is undetermined." Id. at 94. The most that the Court can glean from this report is that Sgt. Peters could testify that the battery possibly caused the fire. However, as Defendants note, this testimony would not necessarily be based upon his report, where at the time of the accident, Sgt. Peters concluded that the cause of the fire was "undetermined." Moreover, there is nothing in his report or in any other portion of the record identified by Williams suggesting that Sgt. Peters will testify that any alleged battery's failure was more likely than not caused by a design defect in a P200 drill. Without such testimony, Williams cannot establish causation through this witness. Beauregard v. Caterpillar, Inc., No 05-3550, 2008 WL 5505467, at *4 (Mass. Super. Dec. 12, 2008) (citing Goffredo, 402 Mass. at 102-03) (granting summary judgment to defendant where expert framed causation in terms of "possibilities"). In the absence of any other proffered expert testimony, summary judgment is also appropriate because Williams has proffered insufficient evidence of causation to proceed to trial.

## V. Conclusion

Accordingly, for the foregoing reasons, Defendants' motion for summary judgment, D. 36, is ALLOWED.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge